## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IMEG CORP. | |
| Plaintiff/Counter-Defendant | No. 20-cv-03316 |
| v. | Judge John F. Kness |
| ATLANTIC SPECIALTY INSURANCE COMPANY and ONEBEACON INSURANCE GROUP, LTD., | |
| Defendants/Counter-Plaintiff. | |

## MEMORANDUM OPINION AND ORDER

After Plaintiff IMEG Corp. ("IMEG") was formed following a merger, it discovered that one of its predecessor companies had potentially violated federal and state laws. IMEG voluntarily reported these potential violations to the federal government and the State of California. IMEG's disclosure to the federal government eventually led to a settlement. IMEG then sought insurance coverage for these disclosures from its insurer, Defendant Atlantic Specialty Insurance Company ("ASIC"), but ASIC has failed to provide the requested coverage. This led IMEG to file a three-count complaint seeking declarations that ASIC owes IMEG a duty to defend and indemnify against the disclosures. ASIC responded with an eight-count counterclaim seeking various declarations that it is not obligated to provide coverage. IMEG moved for judgment on the pleadings as to all counts. (Dkt. 28.) ASIC moved

for judgment on the pleadings as to Counts I, III, VI, and VIII of the counterclaim. (Dkt. 26.)

For the reasons that follow, IMEG's motion for judgment on the pleadings (Dkt. 28) is denied in its entirety. ASIC's motion for judgment on the pleadings (Dkt. 26) is granted as to Counts I, VI, and VIII. ASIC's motion for judgment on the pleadings is granted in part and denied in part as to Count III (granted as to the California Disclosure but denied as to the Federal Disclosure). ASIC's remaining counterclaims (Counts II, IV, V, and VII) are dismissed as moot. IMEG is not entitled to coverage from ASIC under the 2017 Policy for any Claims arising out of the California Disclosure or Federal Disclosure.

## I. BACKGROUND

### A. IMEG's Internal Investigations.

In 2015, engineering firms KJWW, Inc. ("KJWW") and TTG Corporation ("TTG") merged to form IMEG. (Dkt. 1-2 ¶ 19; Dkt. 22 ¶ 2.) That combination (the "Merger") was finalized and effective on January 1, 2017. (Dkt. 24-2 at 6.) In fall 2016, in anticipation of the upcoming Merger, IMEG's General Counsel Karen Guest began reviewing TTG's administrative operations. (*Id.*; Dkt. 17 ¶ 21.)

As Guest was reviewing those operations, she uncovered potential irregularities in the relationship between TTG and a company called Schwab Engineering, Inc. ("Schwab"). (Dkt. 17 ¶ 22; Dkt. 22 ¶ 16.) Schwab was a veteran-owned company formed to obtain federal contracts set aside for service disabled veteran-owned small business entities ("SDVOSB"). (Dkt. 17 ¶¶ 23–24; Dkt. 22 ¶ 3.)

Guest discovered that former TTG executive Sunil Patel was involved in a "rent-a-vet" scheme (the "Scheme") with Schwab. (Dkt. 24-2 at 6.) As part of the Scheme, Schwab would compete for federal contracts set aside for SDVOSB entities and then would sub-contract large portions of the federal contracts it obtained to TTG. (*Id.*) The Scheme, which began in 2009, effectively "rented" Schwab's veteran-owned status to TTG so that TTG could obtain otherwise unavailable contracts. (*Id.*; Dkt. 17 ¶ 25; Dkt. 22 ¶ 3.)

To investigate the Scheme, IMEG hired outside counsel; that attorney then presented recommendations to Guest and IMEG's officers in January 2017. (Dkt. 22 ¶ 53; Dkt. 24-2 at 23–24.) In February 2017, Patel was terminated, allegedly due to his role in the Scheme. (Dkt. 22 ¶54; Dkt. 24-2 at 23.) In May 2017, IMEG then authorized the attorney to analyze IMEG's potential liabilities and duties arising from the Scheme. (Dkt. 24-2 at 23.) The attorney produced a report on his findings, concluding that the Scheme likely violated federal laws and regulations, in particular the False Claims Act (the "FCA"). (*Id.*; Dkt. 22 ¶ 55.) IMEG hired a second law firm to review these findings. (Dkt. 24-2 at 23–24; Dkt. 22 ¶¶ 18–19.) This second law firm did not conduct its own investigation but ultimately agreed with the findings of the first attorney in a report delivered to IMEG in October 2017. (Dkt. 24-2 at 23–24.) In November 2017, IMEG engaged a third law firm that specialized in government disclosures to assist with disclosing the potential violations to the appropriate governmental officials. (*ID.* at 24.)

**B.** **The 2017 and 2018 Policies and Corresponding Warranty Letter.**

Defendant ASIC[1] is a company "engaged in the business of underwriting and issuing insurance policies." (Dkt. 17 ¶ 3.) In late 2017, ASIC issued an insurance policy to IMEG with a policy period of September 30, 2017 through September 30, 2018 (the "2017 Policy"). (*Id.* ¶¶ 6, 29; Dkt. 1-2 at 123.) ASIC issued IMEG another policy the following year, with a policy period of September 30, 2018 through September 30, 2019.[2] (Dkt. 22 ¶ 1.)

On September 27, 2017, before the 2017 Policy was issued but after the internal investigations of the Scheme had taken place, IMEG signed a warranty letter (the "Warranty Letter"). (Dkt. 17-12.) In the Warranty Letter, IMEG acknowledged that ASIC issued the 2017 Policy in reliance on IMEG's statement that IMEG was not "aware of any claim that may fall within the scope of the [2017] Policy or any fact, circumstance, situation, transaction, event, act, error, or omission which they have reason to believe may or could reasonably be foreseen to give right to a claim that may fall within the scope of the [2017] Policy." (*Id.*) IMEG and ASIC agreed that any such claim or set of circumstances would be excluded from coverage under the 2017 Policy. (*Id.*)

---

[1] Defendant OneBeacon Insurance Group, Ltd. was initially named as a Defendant in this lawsuit, but IMEG agreed to dismiss Defendant OneBeacon in exchange for ASIC's agreement that any of its affiliates would be bound by the judgment entered in this case. (Dkt. 15; Dkt. 17 ¶ 6 n.2.)

[2] The following discussion and analysis in this Section reference only the 2017 Policy, but this discussion is equally applicable to the 2018 Policy, which differs from the 2017 Policy only in that it covers a different policy period.

The 2017 Policy identifies IMEG as the "Named Organization" with a "Policy Period" as stated above. (Dkt. 17 ¶¶ 6, 29.) An "Organization" under the 2017 Policy includes the Named Organization (IMEG) and any "Subsidiary," which includes any entity over which the Named Organization has direct or indirect "Management Control." (Dkt. 1-2 at 64–65.) "Management Control" means (1) owning more than fifty percent of the voting, appointment, or designation power for the selection of the Board of Directors; or (2) having the right to elect, appoint, or designate a majority of the Board of Directors. (*Id.* at 64.)

Coverage is available under the 2017 Policy if there is a Claim, which can be either an "Insured Person Claim" or an "Organization Claim." (Dkt 1-2 at 77.) An "Organization Claim" includes "a written demand for monetary, non-monetary or injunctive relief" against the Organization for a "Wrongful Act." (*Id.* at 80.) An "Insured Person Claim" uses the same language, but for an Insured Person. (*Id.* at 78.) A "Wrongful Act" is defined as "any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by the Organization." (*Id.* at 82.)

"Related Claims" in the 2017 Policy include "all Claims for Wrongful Acts based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions, whether related logically, causally or in any other way." (*Id.* at 65.) All

Related Claims, whenever made, are deemed a single Claim made when the earliest of such Related Claims was first made. (*Id.* at 120.)

Under the 2017 Policy, ASIC agreed to pay, on behalf of the Organization, any "Loss from any Organization Claim first made against the Organization during the Policy Period . . . for a Wrongful Act . . . ." (*Id.* at 76.) "Loss" includes monetary damages, judgments, settlements, and pre- and post-judgment interest. (*Id.* at 79.) "Loss" does not include civil or criminal fines and penalties, taxes, or any other amount uninsurable under applicable law. (*Id.*) A consent condition (the "Consent Condition") in the 2017 Policy provides that no insured may "admit any liability for any Claim, settle or offer to settle any Claim or incur any Defense Expenses" without ASIC's prior written consent. (*Id.* at 58.)

### C. The Disclosures.

On November 12, 2017, IMEG self-reported potential violations of federal law and regulations posed by the Scheme (the "Federal Disclosure") to the Department of Veterans Affairs and the U.S. Small Business Administration (collectively, "the Government"). (Dkt. 17 ¶ 27; Dkt. 24-1.) On May 14, 2018, IMEG submitted to the Government a report that summarized IMEG's internal investigations and TTG's potential violations. (Dkt. 22 ¶ 34; Dkt. 24-2.)

Over the course of its internal investigations, IMEG discovered that the Scheme may have affected contracts between Schwab and the State of California. (Dkt. 22 ¶ 31.) Accordingly, on June 13, 2018, IMEG self-reported potential violations of California law and regulations posed by the Scheme (the "California Disclosure")

to the Supervising Deputy Attorney General for the California Department of Justice. (*Id.* ¶¶ 30–32.)

On November 28, 2017, IMEG notified ASIC of the Federal Disclosure. (Dkt. 17 ¶ 19; Dkt. 50 at 5–9.) On January 22, 2018, ASIC informed IMEG that it considered this notice of the Federal Disclosure to be a "notice of circumstances" and not a Claim under the 2017 Policy. (Dkt. 22 ¶ 21; Dkt. 17-3.) ASIC thus denied coverage, reserved all rights and defenses under the 2017 Policy, and requested that ASIC be immediately informed if the Federal Disclosure developed into a Claim. (*Id.*) On September 28, 2018, IMEG submitted another notice to ASIC related to the Federal Disclosure. (Dkt. 17-4; Dkt. 22 ¶ 22.) That notice detailed the Scheme but did not detail any written demand for monetary, non-monetary, or injunctive relief. (Dkt. 22 ¶ 23.) On November 2, 2018, ASIC reiterated its position denying coverage, stating that "ASIC has previously acknowledged and again acknowledges receipt of the Reported Matter as a [potential claim.]" (Dkt. 17-5; Dkt. 22 ¶ 24.)

In early 2019, IMEG notified ASIC of the California Disclosure.[3] (Dkt. 22 ¶ 33; Dkt. 17-9 at 2.)

---

[3] The exact date that IMEG notified ASIC of the California Disclosure is disputed. ASIC states that it received notice on February 5, 2019 (*see* Dkt. 17 ¶ 33), which IMEG denies (*see* Dkt. 22 ¶ 33.) In any case, because ASIC has presented evidence that it corresponded with an IMEG representative in April 2019 regarding the California Disclosure, it is clear that IMEG sent notice of the California Disclosure sometime in early 2019. (*See* Dkt. 17-9.)

### D.     The Settlement.

In December 2018, about one year after receiving the Federal Disclosure[4], the Government offered IMEG a settlement of the FCA violations for $5.27 million (the "Settlement"). (Dkt. 17 ¶ 29; Dkt. 22 ¶ 29.) On December 14, 2018, IMEG sent a letter to ASIC requesting permission to enter into the proposed Federal Settlement. (Dkt. 17 ¶ 23; Dkt. 17-6; Dkt. 22 ¶ 60.) On December 21, 2018, ASIC denied IMEG's request and advised IMEG that it would not provide coverage for the Federal Settlement because IMEG had violated the 2017 Policy when it engaged in settlement discussions with the Government without involving ASIC or seeking ASIC's consent. (Dkt. 17 ¶ 24; Dkt. 22 ¶ 29; Dkt. 17-7.) ASIC noted that IMEG "has not sought, and is not presently seeking, a defense from ASIC of any kind," and requested IMEG to "please so advise" if that understanding was incorrect. (Dkt. 17-7.) That same day, IMEG agreed to and entered into the $5.27 million Settlement with the Federal Government. (Dkt. 17 ¶¶ 29–30.)

On April 24, 2019, ASIC sent a letter to IMEG advising that it would not provide coverage for the Settlement. (Dkt. 22 ¶ 36; Dkt. 17-8.) ASIC sent another letter to IMEG on the same day confirming receipt of the California Disclosure and advising that ASIC considered it to be a "notice of circumstances" under the 2018

---

[4] IMEG alleges that the Federal Government launched an investigation into the Scheme after receiving the Federal Disclosure. (Dkt. 1-2 ¶ 28.) But ASIC does not admit to this, alleging instead that it lacks knowledge or information about whether such an investigation happened. (Dkt. 17 ¶ 28.) Although it is possible that an investigation happened, because this fact is disputed, and because none of the pleadings or attachments support that the Federal Government pursued an investigation, the Court will not assume that such an investigation occurred.

Policy. (Dkt. 22 ¶ 37; Dkt. 17-9.) ASIC requested that IMEG advise ASIC if the California Disclosure developed into a Claim. (*Id.*) On August 16, 2019, IMEG disputed ASIC's denial of coverage, but ASIC maintained its position denying coverage. (Dkt. 22 ¶¶ 38–39; Dkt. 17-10; Dkt. 17-11.)

### E. Procedural History.

On March 27, 2020, IMEG filed a complaint against ASIC in the Circuit Court of Cook County, Illinois for a declaratory judgment that ASIC was required to provide coverage for the Federal Settlement. (Dkt. 1-2 at 3–14.) ASIC timely removed the action to this Court on the basis of diversity jurisdiction.[5] *See* 28 U.S.C. § 1332. (Dkt. 1 at 2.)

---

[5] This topic requires some elaboration. As explained, *supra* n.1, Defendant OneBeacon Insurance Group, Ltd. was initially named as a Defendant in this lawsuit but was later dismissed by agreement. That approach is in some tension with Seventh Circuit precedent, which explains that Rule 41(a) of the Federal Rules of Civil Procedure "does not speak of dismissing one claim in a suit; it speaks of dismissing 'an action'—which is to say, the whole case." *Berthold Types Ltd. v. Adobe Sys. Inc.*, 242 F.3d 772, 777 (7th Cir. 2001). In view of the outcome described by this ruling, however, and that the dismissal of OneBeacon was agreed, this procedural variance by the parties does not require a remedy. Of more pertinence to the issue of diversity jurisdiction is that the Notice of Removal (Dkt. 1) did not, given the parties' insouciance toward OneBeacon's role in the case, describe that entity's citizenship. It is a removing party's burden to show the existence of diversity jurisdiction at the time of removal, *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 510–11 (7th Cir. 2006), but ASIC's Notice of Removal is silent as to both the citizenship of OneBeacon as well as its principal place of business. But publicly-available records of which the Court takes judicial notice (including filings before the United States Securities and Exchange Commission) reflect that OneBeacon (which was later absorbed by another entity) was a Bermuda entity with its principal place of business in Minnesota. In addition, Plaintiff's removed complaint describes OneBeacon as a Minnesota entity. (Dkt. 1-2 at 4 ¶ 4.) Accordingly, the Court is confident that its diversity jurisdiction was secure on the day the case was removed. *Cf. Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993) (diversity jurisdiction "cannot be destroyed" by fraudulent joinder of nondiverse parties; fraudulent joinder can occur "when there is no possibility that a plaintiff can state a cause of action against nondiverse defendants in state court[.]").

IMEG's three-count complaint seeks declarations that under the 2017 Policy: (1) ASIC owes IMEG a duty to defend with respect to the Federal Disclosure; (2) ASIC owes IMEG a duty to indemnify the Settlement; and (3) ASIC is estopped to assert any policy defenses because it breached its duty to defend. (Dkt. 1-2 ¶¶ 32–49.) IMEG also pursues coverage for the California Disclosure under the 2018 Policy, but it does not seek a declaration in that regard in its complaint. (*See* Dkt. 28.) IMEG moved for judgment on the pleadings on all three counts. (*Id.*)

ASIC answered, raised six affirmative defenses, and brought an eight-count counterclaim in response. (Dkt. 17.) ASIC's counterclaim seeks declarations that: (1) the Warranty Letter precludes coverage; (2) IMEG's failure to seek ASIC's consent to the Settlement precludes coverage of the Settlement; (3) the California Disclosure is not a claim; (4) TTG is not an Organization under the 2017 Policy; (5) the alleged Wrongful Acts were committed before the Merger and therefore not covered under the 2017 Policy; (6) there was no insurable Loss under the 2017 Policy; (7) ASIC is entitled to an allocation; and (8) there is no coverage under the 2018 Policy. (*Id.* ¶¶ 48–110.) ASIC moved for judgment on the pleadings as to Counts I, III, VI, and VIII of the counterclaim. (Dkt. 26).

## II.   LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure permits parties to move for judgment on the pleadings after pleadings are closed. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6). *Schimandle v. Dekalb Cnty. Sheriff's Off.*, 114 F.4th 648,

654 (7th Cir. 2024). To survive a 12(c) motion, the challenged pleading must state "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Ingenus Pharms., LLC v. Nexus Pharms., Inc.*, No. 22-cv-2868, 2024 WL 3594437, at *5 (N.D. Ill. July 31, 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017). In deciding Rule 12(c) motions, the pleadings include the complaint, answer, counterclaims, and any attached written instruments. *Citizens Ins. Co. v. Wynndalco Enters., LLC*, 70 F.4th 987, 995 (7th Cir. 2023). Allegations must be construed in the light most favorable to the nonmoving party. *Id.* The Court will enter judgment on the pleadings only if "it is beyond doubt that the nonmoving party cannot prove facts sufficient to supports its position and that the movant is entitled to relief." *Id.*

Because this case is before the Court on diversity jurisdiction, Illinois law governs the substantive issues. *Travelers Prop. Cas. Co. v. Benchmark Ins. Co.*, No. 22-cv-2308, 2024 WL 756945, at *8 (N.D. Ill. Feb. 23, 2024) (citing *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 876 (7th Cir. 2005)). Under Illinois law, an "insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Artisan & Truckers Cas. Co. v. Burlington Insurance Co.*, 90 F.4th 893, 896 (7th Cir. 2024) (quoting *Crescent Plaza Hotel Owner, L.P. v. ZurichAm. Ins.*, 20 F.4th 303, 308 (7th Cir. 2021)). The Court's primary task in construing an insurance policy is to give effect to the parties' intentions as expressed in the policy language, and "apply the terms as written if the policy is unambiguous." *Id.* Unambiguous terms are to be given their

plain and ordinary meaning. *Auto-Owners Ins. Co. v. Munroe*, 614 F.3d 322, 324 (7th Cir. 2010). Ambiguous language must be construed against the insurer if the ambiguity cannot be resolved after application of canons of interpretation. *Artisan & Truckers Cas. Co.*, 90 F.4th at 896. To properly give effect to the parties' intentions, the Court must "construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract. *Travelers Prop. Cas. Co.*, 2024 WL 756945, at *8.

## III.   DISCUSSION

### A.   Count VIII of the Counterclaim: There is No Coverage Under the 2018 Policy.

Count VIII of ASIC's counterclaim alleges that the 2018 Policy is not applicable to either the Federal Disclosure or the California Disclosure. (Dkt. 17 ¶¶ 102–10.) ASIC seeks a declaration of the same. (Dkt. 27 at 12–13.)

IMEG's complaint does not explicitly assert that the 2018 Policy applies to either disclosure. But ASIC seeks this declaration because IMEG, in its answer to the counterclaim, suggested that it was seeking "all coverage available to it" under the 2017 Policy *and* 2018 Policy. (*Id.* at 12; Dkt. 22 ¶ 40.) IMEG explains in its response that the California Disclosure should be covered as a separate Claim under the 2018 Policy. (Dkt. 33 at 4.) In the alternative, IMEG argues that both the Federal Disclosure and the California Disclosure should be covered under the 2017 Policy as Related Claims. (*Id.*) ASIC maintains that the 2017 Policy is the only policy applicable to this case, and that there is no potential coverage under the 2018 Policy

at all because the two Disclosures are Related Claims under the 2017 Policy. (Dkt. 27 at 13.)

The parties do not dispute that ASIC first received notice of the Federal Disclosure on November 28, 2017, during the 2017 Policy Period. (*See* Dkt. 22 ¶ 20.) Accordingly, the 2017 Policy applies to the Federal Disclosure. The question is then whether the California Disclosure, which was reported in 2018, is covered as a separate claim under the 2018 Policy, or as a Related Claim with the Federal Disclosure under the 2017 Policy.

The 2017 Policy states that, when IMEG notifies ASIC during the Policy Period of a Wrongful Act that may subsequently give rise to a Claim, then any subsequent Claim arising out of that Wrongful Act shall be treated as if it had been first made during the Policy Period. (Dkt. 1-2 at 91; Dkt. 22 ¶ 103.) All Related Claims, which include all Claims for Wrongful Acts that involve the same or related facts, circumstances, situations, and transactions, are treated as a single Claim made when the first such Related Claim was made. (Dkt. 17-2 at 13, 39.) Accordingly, if the California Disclosure is considered a Related Claim to the Federal Disclosure, then it is treated as having been made at the same time the Federal Disclosure was made—that is, during the 2017 Policy Period.

IMEG argues that the California Disclosure should be a separate Claim under the 2018 Policy because it involved different TTG projects, different statute violations, and different damages. (Dkt. 33 at 4.) But, at bottom, the California Disclosure and the Federal Disclosure involve the same Wrongful Act: the Scheme.

Both Disclosures arise out of the same facts and circumstances of the operation of the Scheme, which IMEG admits. (*See* Dkt. 22 ¶ 105.) As a result, the California Disclosure and Federal Disclosure are Related Claims deemed to be a single Claim made on November 28, 2017. Accordingly, there is no coverage under the 2018 Policy for either the Federal Disclosure or the California Disclosure. ASIC is entitled to judgment as to Count VIII of the counterclaim.

### B. Count III of the Counterclaim: The California Disclosure Cannot Be a Claim, But the Federal Disclosure Can Be a Claim.

Count III of ASIC's counterclaim seeks a declaratory judgment that neither the California Disclosure nor the Federal Disclosure is a Claim under the 2017 Policy. (Dkt. 17 ¶¶ 69–76.)[6] ASIC argues that because neither Disclosure is a Claim, IMEG is not entitled to coverage.

Under the 2017 Policy, coverage is triggered if IMEG makes a Claim. (*See* Dkt. 1-2 at 76.) A Claim under the 2017 Policy can be either an "Insured Person Claim" or an "Organization Claim." (Dkt. 1-2 at 77.) In the following analysis, the Court first considers whether the California Disclosure and Federal Disclosure can be an Insured Person Claim, and then whether either can be an Organization Claim.

---

[6]    Count III of ASIC's Counterclaim explicitly seeks a declaratory judgment only for the California Disclosure. But ASIC's motion for judgment on the pleadings seeks a judgment for both the California Disclosure *and* the Federal Disclosure, arguing that neither is a Claim under the 2017 Policy. (Dkt. 27 at 16–19.) In its Response, IMEG does not dispute ASIC's added request for a declaration on the Federal Disclosure. (*See* Dkt. 33 at 12–14.) Accordingly, the Court will discuss in this Section whether both Disclosures qualify as Claims under the 2017 Policy.

### 1. *Insured Person Claim.*

An Insured Person Claim is a "written demand for" or a judicial proceeding for monetary relief against an Insured Person for a Wrongful Act. (Dkt. 1-2 at 40, 78–79.) ASIC argues that neither the California Disclosure nor the Federal Disclosure is an Insured Person Claim because neither was a demand or a proceeding against an Insured Person. (Dkt. 27 at 17–18.) ASIC contends that the Disclosures were exactly that: disclosures, and nothing more. (*Id.*) IMEG does not address whether the Disclosures constitute Insured Person Claims in its Response (*see* Dkt. 33) or its motion (*see* Dkt. 28). Accordingly, the Court interprets IMEG's silence as a concession that neither the California Disclosure nor the Federal Disclosure are Insured Person Claims. IMEG is therefore not entitled to coverage for the California Disclosure or the Federal Disclosure to the extent IMEG argues they are Insured Person Claims.

### 2. *Organization Claim.*

Coverage is triggered if there is an "Organization Claim." Under the 2017 Policy, an Organization Claim is a

(1)    a written demand for monetary, non-monetary or injunctive relief . . . ; or

(2)    a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief commenced by:

    (a)    the service of a complaint or similar pleading; . . . or

    (c)    the filing of a notice of charges, formal investigative order or similar document,

against the Organization for a Wrongful Act; . . . .

(Dkt. 1-2 at 80.)

        (a)    <u>The California Disclosure is Not an Organization Claim.</u>

IMEG argues that the California Disclosure is an Organization Claim because "the State of California launched an investigation of IMEG in response to the California Disclosure." (Dkt. 29 at 12.) IMEG provides no additional support for this statement. Indeed, the pleadings do not refer to any investigation by any other entity than IMEG when it conducted its internal investigation. Nor can the Court find support anywhere in the pleadings that the California government made a non-monetary or monetary demand for relief. In any event, IMEG does not argue that California made any non-monetary or monetary demand for relief. On the contrary, the pleadings show that the California government was informed of potential violations through the California Disclosure, but they do not support that anything further happened. (*See* Dkt. 24-3.) Accordingly, the California Disclosure cannot constitute an Organization Claim under the 2017 Policy subject to coverage by ASIC. ASIC is entitled to judgment for Count III of the counterclaim as to the California Disclosure.

        (b)    <u>IMEG Has Shown That It Received a Written Demand for Monetary Relief for the Federal Disclosure.</u>

IMEG argues that the Federal Disclosure is an Organization Claim under the terms of the 2017 Policy, thus triggering ASIC's duty to defend and duty to indemnify, because the Government gave IMEG a written demand for non-monetary and monetary relief. As to the non-monetary demand, IMEG argues that the Government launched an investigation into IMEG, which included "numerous demands for

information and relief," and that the Government "repeatedly threatened IMEG with litigation if it failed to comply" with those demands. (Dkt. 37 at 2.)[7] As to a monetary demand, IMEG states that it received a demand for monetary relief from the Government when it received the proposed Settlement. (Dkt. 29 at 13.) IMEG thus concludes that these non-monetary and monetary demands for relief from the Government make the Federal Disclosure an Organization Claim.

ASIC responds that the Federal Disclosure cannot be an Organization Claim for several reasons. First, ASIC argues that IMEG did not cite to anything in the record to support that IMEG received non-monetary demands for information from the Government. (Dkt. 32 at 5.) Second, ASIC argues that the proposed settlement from the Government was not a monetary demand for relief because it was "not the result of a demand for relief" but instead "reflected the consummation of a process, and discussions, that IMEG had with the Government (without ASIC's knowledge and consent) following" the Disclosures. (*Id.* at 5–6.) An agreed-upon settlement, therefore, cannot constitute a "demand," according to ASIC. (*See* Dkt. 41 at 3.) In sum, ASIC argues that IMEG cannot show that it received any "written demand for relief," which means that there cannot be an Organization Claim. (*See id.* at 6–7.)

---

[7] IMEG does not appear to dispute ASIC's claim that nothing is found in the record to support these purported threats and "numerous demands for information and relief." Instead, IMEG contends that ASIC pointing out the lack of records is "taking advantage of the procedural posture of th[e] case." (Dkt. 37 at 2.) IMEG is confident that discovery would reveal what ASIC cannot know because it did not participate in the investigation—that the Government "repeatedly requested information or made written demands on IMEG during the course of the investigation." (*Id.* at 3.)

At this stage, the Court may analyze only the pleadings[8] to determine whether a written demand for relief was made. First, the complaint alleges that the Government launched an investigation into IMEG in response to the Federal Disclosure and, after the investigation concluded, presented IMEG with a proposed $5.27 million settlement. (Dkt. 1-2 ¶¶ 28–29.) Next, the counterclaim acknowledges the existence of the settlement offer. (*See, e.g.*, Dkt. 17 ¶ 4.) Various letters attached as exhibits to the pleadings support that IMEG self-disclosed the Scheme to the Government, IMEG received a settlement offer from the Government, and ASIC refused to provide coverage for the Settlement:

- A January 22, 2018 letter from ASIC acknowledges its awareness that IMEG had self-disclosed the Scheme to the Government. (Dkt. 17-3 at 2.)

- A letter dated November 2, 2018 from ASIC to Guest states, "We understand that the United States Attorneys' Office contacted IMEG regarding potential violations, but no formal legal proceedings have been initiated by the government with respect to IMEG." (Dkt. 1-2 at 123; Dkt. 17-5 at 3.)

- A letter dated December 14, 2018 from IMEG's attorney states that "IMEG has been provided with a proposed settlement agreement by the [Government]" and requests ASIC's consent to enter into the settlement. (Dkt. 1-2 at 128; Dkt. 17-6 at 2.)

---

[8] Rule 12(c) permits a judgment based on the pleadings alone, a category that includes (1) the complaint, (2) the answer, (3) counterclaims, and (4) any written instruments attached as exhibits. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (citing Fed. R. Civ. P. 10(c)). In addition, the Court here considers the parties' stipulation, which incorporates several additional exhibits as attachments to the Counterclaim. (Dkt. 24.) No other documents will be considered.

- A letter dated December 21, 2018 from ASIC's attorney acknowledges the settlement offer but refuses to approve it without further information. (Dkt. 1-2 at 129–30; Dkt. 17-7 at 2–3.)

- A letter dated April 24, 2019 from ASIC's attorney reiterates refusal to provide coverage for the settlement offer because ASIC did not provide prior approval. (Dkt. 1-2 at 133; Dkt. 17-8 at 3.)

- A letter dated August 16, 2019 from IMEG's attorney responds to the April 24, 2019 letter. (Dkt. 17-10.) This letter references the settlement offer from the Government and disputes ASIC's position not to provide coverage. (*Id.*)

From the allegations in the pleadings and the attached exhibits, the Court can find that IMEG engaged in settlement discussions with the Government and eventually entered into a settlement agreement without prior approval from ASIC. Nowhere in the pleadings and exhibits do the parties provide a copy of the settlement offer. Nor do the pleadings support that IMEG received non-monetary demands for information as a result of an investigation by the Government.

Because the Court cannot find any support in the pleadings that IMEG received non-monetary demands for information from the Government, the Federal Disclosure cannot be an Organization Claim. But even though a copy of the Settlement is not in the pleadings, it is clear from the pleadings and the correspondence between the parties that such a settlement offer existed and was eventually finalized. IMEG informed ASIC of the settlement offer. ASIC then acknowledged that a settlement offer existed when it repeatedly refused to provide

coverage for the Settlement. A settlement offer is undisputably a written demand for monetary relief under the definition of an Organization Claim.[9] As to the Federal Disclosure, therefore, IMEG has shown that it received a written demand for monetary relief to support its position that it is entitled to coverage as an Organization Claim.

(c)    <u>The Demand was Made Against IMEG, Not TTG.</u>

But the Court cannot stop its Organization Claim analysis there. To be entitled to coverage under the 2017 Policy, IMEG must meet the remaining terms of an Organization Claim. To repeat, an Organization Claim is a "written demand for monetary . . . relief . . . against the Organization for a Wrongful Act." (Dkt. 1-2 at 80.) The 2017 Policy defines "Organization" as IMEG and its Subsidiaries. (Dkt. 1-2 at 64–65.) A Subsidiary is any entity over which IMEG has Management Control, and Management Control means owning over 50% of the voting power to select the Board of Directors. (*Id.*) The parties dispute whether the "Organization" element is met.

ASIC argues that any demand for relief was not made against an "Organization" under the terms of the 2017 Policy. ASIC contends that a demand for relief involved conduct by TTG, which was not an entity over which IMEG had Management Control and therefore not an Organization; thus, ASIC is not obligated

---

[9] To the extent ASIC argues that a settlement offer is not a "demand" but instead reflects the "consummation of a process and discussions" between IMEG and the Government, the Court disagrees. (*See* Dkt. 32 at 5.) The undisputed facts show that IMEG received a settlement offer for $5.27 million from the Government, which this Court considers a demand for monetary relief from the Government to IMEG. *See, e.g., First Horizon Nat'l Corp. v. Hous. Cas. Co.*, No. 15-cv-2235, 2017 WL 2954716, at *13 (W.D. Tenn. June 23, 2017), *aff'd*, 742 Fed. App'x 905 (6th Cir. 2018) (interpreting a settlement offer from the Department of Justice as a "demand for monetary relief" under an insurance policy).

to provide coverage. (Dkt. 32 at 8–11.) IMEG maintains that it did have Management Control over TTG, thus making TTG an Organization for purposes of an Organization Claim. (Dkt. 37 at 4–6.)

But whether IMEG had Management Control over TTG, and whether TTG is an Organization, is irrelevant. This is because an Organization Claim as defined in the 2017 Policy is a demand for monetary relief "*against* the Organization for a Wrongful Act." As the Court has discussed, the Settlement was a demand for monetary relief. But the Settlement was not made *against* TTG. It was made against IMEG, as IMEG points out. (Dkt. 29 at 15.) The undisputed evidence shows that IMEG conducted internal investigations, IMEG made the Federal Disclosure, and IMEG received the settlement offer from the Government. The Government did not make any demand against TTG. Rather, the Government made a written demand for monetary relief (the Settlement) to IMEG (an Organization) for a Wrongful Act (the Scheme). The Settlement that resulted from the Federal Disclosure thus meets the definition of an Organization Claim. As an Organization Claim, therefore, the Federal Disclosure is a Claim. Accordingly, the Court denies ASIC's motion for judgment on Counterclaim III as to the Federal Disclosure because it is a Claim under the 2017 Policy.

### C.     Count VI of the Counterclaim: The Settlement Is an Uninsurable and Uncovered Loss.

In Count VI of its Counterclaim, ASIC argues that it does not owe coverage to IMEG to the extent the Settlement "involve[s] civil or criminal fines or penalties, disgorgement, liquidated damages, punitive damages, or otherwise uninsurable

damages that do not constitute covered or insurable Loss" under the 2017 Policy. (Dkt. 17 ¶ 98.)

Under the terms of the 2017 Policy, ASIC will pay Loss for any Organization Claim made against the Organization during the Policy Period for a Wrongful Act. (Dkt. 1-2 at 76.) "Loss" includes monetary damages, judgments, settlements, and interest. (*Id.* at 79.) "Loss" does not include civil or criminal fines or penalties, taxes or tax penalties, or any other amount not insurable under the law. (*Id.* at 79–80.) ASIC argues that coverage of the Settlement "represents the return of money IMEG wrongfully and fraudulently obtained from the Government through false pretenses," which is uninsurable under Illinois law. (Dkt. 27 at 22.) IMEG responds that ASIC is improperly raising this "Loss" argument for the first time in an improper attempt to "mend the hold." (Dkt. 33 at 14–15.) In the alternative, IMEG argues that the Settlement is covered Loss, because it "is not repayment of wrongfully obtained money as IMEG did not obtain anything as a result of [the Scheme]."[10] (*Id.* at 15–18.)

IMEG's "mend the hold" argument does not apply here. Under Illinois law, the "mend the hold" doctrine "forbids the defendant in a breach of contract suit . . . to change its defenses . . . without a good reason to do so." *Ryerson Inc. v. Fed. Ins. Co.*,

---

[10] IMEG advances a third argument: this Court should find IMEG to be an "innocent co-insured" that is entitled to coverage under the innocent co-insured doctrine. (Dkt. 33 at 17.) Under that doctrine, according to IMEG, if one insured party commits an intentional harm, insurance coverage is suspended as to that party but not as to any innocent co-insured party. (*Id.*) IMEG does not argue, nor can this Court find, that TTG is a "co-insured party" under the 2017 Policy. Accordingly, this doctrine cannot apply. Furthermore, the cases IMEG cites (of which only one is within this District) interpret insurance contract language providing for this doctrine. IMEG does not present any language within the 2017 Policy that authorizes the co-insured doctrine. For these two reasons, the Court will not consider IMEG's co-insured doctrine argument.

676 F.3d 610, 614 (7th Cir. 2012). But this forbiddance does not prohibit the defendant from adding a defense after a lawsuit commences. *Id.* (mend the hold doctrine "does not confine [a defendant] to the defense (or defenses) that he announced before the suit"); *Hoogenboom v. Trs. of Allied Servs. Div. Welfare Fund*, 593 F. Supp. 3d 826, 834 (N.D. Ill. Mar. 24, 2022). Such is the case here. ASIC's Loss argument is not a *change* to its defense, but merely an additional defense ASIC raises. And ASIC expressly reserved its right to exert additional defenses to the extent the Federal Disclosure involved "uninsurable damages that do not constitute covered or insurable Loss." (Dkt. 1-2 at 135.) ASIC is thus permitted to move forward with its Loss argument.

As to IMEG's argument that the Settlement constitutes covered Loss, it is undisputed that the return of money wrongfully and fraudulently obtained through false pretenses is uninsurable under the terms of the 2017 Policy. (*See* Dkt. 33 at 14–18; Dkt. 27 at 22–23.) Nor do the parties dispute that the Settlement is a repayment of fraudulently obtained money. (*See* Dkt. 33 at 17.) Rather, the parties dispute whether this uninsurable loss can be imputed to IMEG when TTG, not IMEG, was the entity that fraudulently obtained money by operating the Scheme.

IMEG maintains that the Settlement cannot be uninsurable Loss as to itself because all wrongfully obtained money was obtained by TTG. It is true that TTG wrongfully obtained money from the Scheme. It is also true, however, that Illinois law has long held that "a corporation that purchases the assets of another corporation is not liable for the debts or liabilities of the transferor corporation . . . .[unless] the

transaction amounts to a consolidation or merger of the purchaser or seller corporation." *Vernon v. Schuster*, 688 N.E.2d 1172, 1165 (Ill. 1997); *see also Synergy Global Outsourcing, LLC v. Sagility Operations Inc.*, No. 21 C 5652, 2024 WL 3757081, at *5 (N.D. Ill. Aug. 9, 2024); *People* ex rel. *Dep't of Human Rights v. Oakridge Healthcare Ctr., LLC*, 181 N.E.3d 184, 192 (Ill. 2020). As the undisputed facts in this case show, the "merger" exception applies. TTG merged into IMEG as of January 1, 2017. (*See* Dkt. 22 ¶ 2; Dkt. 24-2 at 6.) As a result of that merger, IMEG inherited responsibility for TTG's assets, obligations, and liabilities—including any liability to pay for money TTG fraudulently acquired. Accordingly, the Settlement that resulted from the Scheme represents a return of fraudulently obtained funds for which IMEG is liable under the 2017 Policy. Because the Settlement is an uninsurable Loss under the 2017 Policy, IMEG is not entitled to coverage from ASIC. Accordingly, ASIC is entitled to judgment as to Count VI of its counterclaim.

### D. Count I of the Counterclaim: The Warranty Letter Excludes Claims Arising from the Scheme.

Even if the Settlement was an insurable Loss, ASIC argues in Count I of the counterclaim that an exclusion to coverage applies because IMEG signed the Warranty Letter. *See OneBeacon Am. Ins. Co. v. City of Zion*, 119 F. Supp. 3d 821, 833 (first quoting *Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 752 (Ill. 2009); and then quoting *Atl. Mut. Ins. Co.*, 734 N.E.2d 50, 56 (Ill. App. Ct. 2000)) ("Once the insured has demonstrated coverage, the burden then shifts to the insurer to prove that a limitation or exclusion applies. . . . Where the insurer relies on a provision that it contends excludes coverage, . . . [the Court] review[s] the applicability of the

provision to ensure it is 'clear and free from doubt' that the policy's exclusion prevents coverage."). ASIC thus seeks a declaration that coverage of any potential claims related to the Scheme is precluded by the Warranty Letter. (Dkt. 27 at 13–19.)

The Warranty Letter excludes from coverage circumstances that "they [IMEG] have reason to believe may or could reasonably be foreseen to give rise to a claim that may fall within the scope of the [2017] Policy." (Dkt. 17-12.) As a result, the 2017 Policy excludes from coverage circumstances that IMEG subjectively knew could form the basis of a claim and those that objectively could reasonably be expected to form the basis of a claim.

IMEG signed the Warranty Letter on September 27, 2017. (Dkt. 17-12.) Fewer than two months later, on November 12, 2017, IMEG made the Federal Disclosure. (Dkt. 24-1.) IMEG disclosed the following undisputed facts in the Federal Disclosure. In late 2016, before IMEG executed the Warranty Letter, IMEG had begun investigating the Scheme. (Dkt. 22 ¶ 16; Dkt. 24-1 at 3.) IMEG then conducted its own internal investigation and identified potential violations. (Dkt. 24-1 at 3.) IMEG also retained outside counsel, who presented a report in June 2017 agreeing that potential violations had occurred and that further investigation was warranted. (Dkt. 24-1 at 3.) IMEG retained a second law firm to assess these findings of potential violations, after which IMEG "determined that violations did occur." (*Id.*) Upon this determination, IMEG hired a third law firm to conduct an internal investigation. (*Id.*) That investigation was eventually completed in May 2018. (Dkt. 24-2.) At this time, IMEG had also terminated Sunil Patel, allegedly for his role in the Scheme. (Dkt. 22 ¶¶ 17, 54.) IMEG signed the Warranty Letter on September 27, 2017; made

the Federal Disclosure on November 12, 2017; and sent notice of the Federal Disclosure to ASIC on November 21, 2017. (*See* Dkt. 50 at 5–9.)

Based on this timing, ASIC contends that, when IMEG executed the Warranty Letter, IMEG knew of the Scheme. (Dkt. 27 at 13.) IMEG thus had, or should have had, reason to believe the Scheme could give rise to a claim under the 2017 Policy. (*Id.*) As a consequence, according to ASIC, any claims arising out of the Scheme are excluded from coverage. (*Id.* at 15.)

IMEG maintains that the Warranty Letter cannot preclude coverage under the 2017 Policy because IMEG "did not have knowledge that the Federal Government would hold it liable for [the Scheme]." (Dkt. 33 at 4.) IMEG adds that it could not have known that the Government would hold IMEG responsible for TTG's actions. (*Id.* at 6.) At the very least, IMEG argues, additional discovery is necessary to determine IMEG's knowledge. (*Id.* at 11–12.) IMEG also maintains that, because ASIC did not initiate a declaratory judgment action in a timely manner, ASIC should be estopped to make this argument. (*Id.* at 5.) Finally, IMEG argues that, because ASIC did not raise this misrepresentation issue until it denied IMEG's claim in 2019, ASIC's belief that IMEG made a misrepresentation on the Warranty Letter is not an appropriate argument. (*Id.* at 10–11.)

As the insurer, ASIC has the burden of proving that an exclusion to coverage under the 2017 Policy applies. *See Santa's Best Crafts, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 347 (7th Cir. 2010) (citing *Ins. Corp. of Hanover v. Shelborne Assocs.*, 905 N.E.2d 976, 982 (Ill. App. Ct. 2009)). It must be "clear and free from doubt" that the policy's exclusion prevents coverage. *St. Paul Fire & Marine Ins. Co.*

*v. Antel Corp.*, 899 N.E.2d 1167, 1174 (Ill. App. Ct. 2008). In this instance, regardless of IMEG's subjective inability to know that the Government would make a settlement demand, ASIC has shown that the Warranty Letter excludes coverage for the Scheme under the 2017 Policy.

IMEG argues that it did not know that the Federal Disclosure would lead to the Settlement for which it contends IMEG should be responsible. It may be true that IMEG subjectively believes this, but IMEG's subjective belief is not relevant. Both Illinois law and the Warranty Letter mandate an objective standard in determining an insured party's knowledge of a potential claim. (Dkt. 17-12 at 2 ("No individual or entity . . . is aware of any claim that may fall within the scope of the Policy or . . . *which they have reason to believe may or could reasonably be foreseen* to give rise to a claim . . . .").) *See Cardenas v. Twin City Fire Ins. Co.*, No. 13 C 8236, 2014 WL 4699670, at *5 (N.D. Ill. Sept. 19, 2014) (applying an objective knowledge test to determine whether an exclusion to coverage applies); *Minn. Laws. Mutual Ins. Co. v. Schulman*, No. 14-cv-50142, 2016 WL 4988006, at *11 (N.D. Ill. Sept. 19, 2016) (insured's subjective belief that no claim existed irrelevant because objective standard applies); *Smith v. Neumann*, 682 N.E.2d 1245, 1254 (Ill. App. Ct. 1997) ("an objective standard should apply in determining whether [the insured party] had a basis to believe that his [wrongful acts] might result in a claim"); *St. Paul Reinsurance Co. v. Williams & Montgomery, Ltd.*, No. 00 C 5037, 2001 WL 1242891, at *6 (N.D. Ill. Oct. 17, 2001) (same); *Ratcliffe v. Int'l Surplus Lines Ins. Co.*, 550 N.E.2d 1052 (Ill. App. Ct. 1990) (same); *Evanston Ins. Co. v. Security Assurance Co. (Evanston)*, 715 F. Supp. 1405 (N.D. Ill. 1989) (same).

27

Applying an objective standard, IMEG knew or should have known that the Scheme could have risen to a Claim eligible for coverage under the 2017 Policy. IMEG does not dispute that it learned of the Scheme in 2016, hired several teams of outside counsel to conduct internal investigations in early 2017, received investigation reports suggesting violations had occurred in mid-2017, and engaged in internal discussions throughout 2017. Nor does IMEG dispute that it signed the Warranty Letter on September 27, 2017, in which it assured ASIC that it was not aware of any potential claim. From an objective standpoint, there can be no doubt that, when IMEG signed the Warranty Letter and then later signed the 2017 Policy, IMEG knew of and was actively investigating the Scheme.

IMEG argues that it did not know it could be liable for TTG's wrongful acts, but that argument fails. IMEG itself contacted the Government to disclose the Scheme, and in that Federal Disclosure, IMEG revealed that TTG would soon be dissolving. (*See* Dkt. 24-1 at 2–4.) IMEG cannot now argue that it is surprised that it would be held responsible for TTG's actions. In any event, recall the very broad language in the Warranty Letter, which refers to circumstances that "*may* fall within the scope of the Policy" and for which IMEG could have "reason to believe *may* or could reasonably be foreseen to give rise to a claim that *may* fall within the scope of the Policy[.]" (Dkt. 17-12) (emphasis added). Nothing in that open-ended language supports IMEG's present expressions of surprise or disclaimers of knowledge. Put another way, any reasonable entity with IMEG's level of business sophistication would have known that the Scheme had to be disclosed to an insurer. Accordingly, under the undisputed facts of this case, IMEG cannot reasonably assert that it lacked

knowledge of the Scheme or was justifiably unaware that it should have been disclosed in the Warranty Letter.[11]

IMEG's procedural arguments also fail. IMEG first argues that ASIC must be estopped to rely on the Warranty Letter to deny coverage. (Dkt. 33 at 9–10.) As the parties agree, however, estoppel is only appropriate if the insurer has breached its duty to defend. (*See* Dkt. 32 at 12–13; Dkt. 36 at 6; Dkt. 37 at 8–9.) As there has yet been no holding that ASIC breached its duty to defend IMEG, ASIC is not estopped to make an argument based on the Warranty Letter. *See Lemko Corp. v. Fed. Ins. Co.*, 70 F. Supp. 3d 905, 913 (N.D. Ill. Sept. 30, 2014).

IMEG also argues that ASIC has waived its right to assert its Warranty Letter argument because ASIC did not "promptly exercise its right of recession [*sic*]." (Dkt. 33 at 10.) This argument, however, misconstrues ASIC's contention: that the Warranty Letter provided a substantive basis to deny coverage. ASIC may therefore proceed with its Warranty Letter argument.

Because IMEG breached the Warranty Letter by failing to reasonably inform ASIC of the facts of the Scheme at the time it signed the Warranty Letter, any claims arising out of the Scheme are excluded from coverage under the 2017 Policy. Accordingly, the Court enters judgment on the pleadings in ASIC's favor as to Count I of its Counterclaim.

---

[11] Because IMEG's subjective awareness of a potential claim is irrelevant, so too is any discovery IMEG requests to uncover its knowledge. (*See* Dkt. 33 at 11–12.)

### E.    Counts I and II of the Complaint: ASIC Does Not Have a Duty to Defend or a Duty to Indemnify.

IMEG seeks judgment on the pleadings for Counts I and II of the complaint. (Dkt. 28.) As to Count I, IMEG seeks a declaration that ASIC owes IMEG a duty to defend against any claim arising out of the Scheme, and that ASIC breached that duty. (Dkt. 1-2 ¶¶ 32–38.) In Count II, IMEG seeks the same declaration, but for the duty to indemnify. (*Id.* ¶¶ 39–45.)

Under Illinois law, an insurer is obligated to defend its insured if any portion of the underlying complaint potentially falls within the scope of the policy's coverage. *See Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.*, 566 F.3d 689, 694 (7th Cir. 2009); *Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 688 (7th Cir. 2008). The duty to defend is broader than the duty to indemnify. *Lyerla*, 536 F.3d at 688. If an insurer has no duty to defend, it therefore also has no duty to indemnify. *Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010).

As explained above, the California Disclosure is not a Claim, the Settlement is uninsurable Loss, and the Warranty Letter excludes any coverage under the 2017 Policy for claims arising out of the Scheme. Accordingly, for these three reasons, ASIC has neither a duty to defend nor a duty to indemnify IMEG for any claim arising under either Disclosure. IMEG's motion for judgment on the pleadings as to Counts I and II is therefore denied.

### F.    Count III of the Complaint: ASIC Is Not Estopped to Make Policy Arguments.

Count III of IMEG's complaint argues that ASIC must be estopped to make policy defenses to coverage because ASIC has allegedly breached its duty to defend

30

and indemnify IMEG. (Dkt. 1-2 ¶¶ 46–49.) IMEG asks the Court to enter judgment for IMEG as to Count III.

These estoppel arguments, however, need not be addressed, as the doctrine of estoppel only applies if the insurer has breached its duty to defend. *Cardenas*, 2014 WL 4699760, at *6 (citing *Am. Safety Cas. Ins. Co. v. City of Waukegan*, 678 F.3d 475, 485 (7th Cir. 2012)); *see also Lemko Corp.*, 70 F. Supp. 3d at 913. Because ASIC has not breached its duty to defend, ASIC is not estopped to assert policy defenses. Accordingly, the Court denies IMEG's motion for judgment on the pleadings as to Count III.

### G. Counts II, IV, V, and VII of the Counterclaim Are Dismissed as Moot.

ASIC's counterclaim also includes several additional Counts: (1) Count II, which seeks a declaration that IMEG's failure to get ASIC's consent to sign the Settlement precludes coverage; (2) Count IV, which seeks a declaration that TTG is not an Organization; (3) Count V, which seeks a declaration that ASIC does not owe coverage because the Wrongful Acts were committed outside of the Policy Period; and (4) Count VII, which argues that ASIC is entitled to an allocation. (Dkt. 17 ¶¶ 58–68, 77–95, 99–101.) ASIC does not, however, move for judgment on the pleadings as to these four counterclaims. But this Court has found that IMEG is not entitled to coverage from ASIC under the 2017 Policy. Resolution of these counterclaims would therefore not affect or change the Court's holding. Accordingly, these remaining four counterclaims are dismissed as moot.

## IV.     CONCLUSION

For the foregoing reasons, IMEG's motion for judgment on the pleadings (Dkt. 28) is denied in its entirety. ASIC's motion for judgment on the pleadings (Dkt. 26) is granted as to Counts I, VI, and VIII. ASIC's motion for judgment on the pleadings is granted in part and denied in part as to Count III (granted as to the California Disclosure but denied as to the Federal Disclosure). ASIC's remaining counterclaims (Counts II, IV, V, and VII) are dismissed as moot. IMEG is not entitled to coverage from ASIC under the 2017 Policy for any Claims arising out of the California Disclosure or Federal Disclosure.

SO ORDERED in No. 20-cv-03316.

Date: March 31, 2025

_____
JOHN F. KNESS
United States District Judge